David J. McGlothlin, Esq. (SBN: 165634)
david@kazlg.com
Ryan L. McBride, Esq. (Admitted Pro Hac Vice)
ryan@kazlg.com
**KAZEROUNI LAW GROUP, APC**
4455 E. Camelback Road, Suite C250
Phoenix, AZ 85018
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Abbas Kazerounian, Esq. (Admitted Pro Hac Vice)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Attorneys for Plaintiff and the putative class

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
[PORTLAND DIVISION]

| | |
|---|---|
| Bryon Scott, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>vs.<br><br>The Federal Savings Bank, FDE Marketing Group, LLC, Frank Bisesi, and Digital Media Solutions, LLC f/k/a Best Rate Referrals,<br><br>    *Defendants.* | Case Number: 3:21-cv-00291-HZ<br><br>**[CLASS ACTION]**<br><br>**Second Amended Complaint For Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. Plaintiff, Bryon Scott, brings this action against Defendant The Federal Savings Bank ("TFSB"), FDE Marketing Group, LLC ("FDE"), Frank Bisesi ("Mr. Bisesi"), and Digital Media Solutions, LLC f/k/a Best Rate Referrals ("DMS") (or jointly as "Defendants"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3. TFSB is a federally chartered bank. To promote its services, TFSB engages in unsolicited marketing, harming thousands of consumers in the process.

4. FDE, Mr. Bisesi, and DMS are all agents of TFSB who call consumers on behalf of TFSB in order to promote TFSB's services.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendants' illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

7. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendants. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for

federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

8.  Venue is proper in the United States District Court for the District of Oregon pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendants provide and market their services within this district thereby establishing sufficient contacts to subject them to personal jurisdiction. Further, Defendants' tortious conduct against Plaintiff occurred within the State of Oregon and, on information and belief, Defendants have made the same phone calls complained of by Plaintiff to other individuals within this judicial district, such that some of Defendants' acts in making such calls have occurred within this district, subjecting Defendants to jurisdiction in the State of Oregon.

## PARTIES

9.  Plaintiff is a natural person who, at all times relevant to this action, was a resident of Multnomah County, Oregon.

10. TFSB is an Illinois corporation whose principal office is located at 300 N Elizabeth St STE 3E, Chicago, IL 60607-1134. Defendant directs, markets, and provides its business activities throughout the United States.

11. FDE is a Florida limited liability company doing business in Oregon. Specifically, FDE reaches out to consumers located in Oregon to solicit business on behalf of TFSB.

12. Mr. Bisesi is an individual and the sole owner and operator of FDE. Mr. Bisesi is presumably a resident of Florida.

13. DMS is a Florida limited liability company doing business in Oregon. Specifically, DMS reaches out to consumers located in Oregon to solicit business on behalf of FDE and/or TFSB. DMS is believed to have purchased and/or merged with Best Rate Referrals, who FDE has alleged made the alleged violating call to Plaintiff.

## THE TCPA

14. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

15. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

16. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express *written* consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

17. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

18. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

19. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

20. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

21. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id*.

22. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

23. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions*

*Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

24. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FACTS

25. In March 2019, Defendants called Plaintiff's personal cellular telephone number ending in 7959 (the "7959 Number") at least ten times.

26. FDE was contracted by TFSB to make calls and forward those calls to TFSB in what is referred to as a "warm transfer" "live transfer" or "hot transfer."

27. FDE hired a company called Best Rate Referrals ("BRR") to make these calls. BRR was subsequently purchased by DMS who assumed all of BRR's liabilities.

28. During the March 2019 phone calls, Defendants represented themselves as an entity called "Veterans Services" and included a prerecorded message regarding time-sensitive VA benefits.

29. During March 2019, Plaintiff answered one of the phone calls and the phone call was transferred to a representative at TFSB, where TFSB attempted to sell Plaintiff cash out refinances for VA loans.

30. On the March 2019 call, Plaintiff informed TFSB's vice president, Summer Long, that Plaintiff did not wanted to be contacted again.

31. In January 2021, Defendant again called Plaintiff's 7959 Number to solicit the sale of VA benefits. That call was initiated by Theresa Long, on behalf of Summer Long, Vice President of TFSB. Plaintiff told Theresa Long on the call that he did not want to be called by TFSB anymore.

32. After the January 2021 phone call, Plaintiff sent an email to an employee of TFSB, Summer Long, reiterating to Ms. Long that Plaintiff previously asked not to be contacted by TFSB. Plaintiff's email stated:

> Ms Long,
>
> We spoke in 2019 at which time I informed you that you should not have been contacting me via phone and that I did not want to be contacted again.
>
> I received a call from Theresa Long on your behalf last week. I am on the national do not call registry and should be on your internal do not call list so I should not be called. I am reiterating that I do not want to be contacted again. The number that is registered is [***-***]-7959.

33. Summer Long responded as follows:

> Block my number.
> I'll block ur emails as well

34. TFSB's representative's response shows that TFSB knew that it was calling Plaintiff without his permission. It further demonstrates TFSB's disregard for Plaintiff's desire to not be called by Defendants. The email demonstrates the willful conduct by TFSB in calling Plaintiff and putative class members.

35. TFSB subsequently called Plaintiff through another agent on March 29, 2022.

36. Plaintiff's phone number ending in 7959 is on the national do not call registry and has been since more than 31 days before he started receiving calls from Defendants.

37. Plaintiff is informed and believes is on The Federal Savings Bank's internal do not call list as he has requested it be put there in the past.

38. Defendants' phone calls constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff cash out refinances for VA loans.

39. Plaintiff received the phone calls within this judicial district and, therefore, Defendants' violation of the TCPA occurred within this district. Upon information and belief, Defendants made other phone calls to individuals residing within this judicial district.

40. At no point in time did Plaintiff provide Defendants with his express written consent to be contacted.

41. Plaintiff is the subscriber and sole user of the 7959 Number, and is financially responsible for phone service to the 7959 Number.

42. The phone calls originated from telephone number 260-445-5833, a number which upon information and belief is owned and operated by Defendants and/or Defendants' agent(s).

43. Defendants' unsolicited phone calls caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants' phone calls also inconvenienced Plaintiff and caused disruption to his daily life.

44. Defendants' unsolicited phone calls caused Plaintiff actual harm. Specifically, Plaintiff estimates that he spent numerous hours investigating the unwanted phone calls including how they obtained his number and who the Defendants were.

45. Furthermore, Defendants' phone calls and voicemails took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited phone calls and voicemails like Defendants' poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

///

///

///

# CLASS ALLEGATIONS

### PROPOSED CLASS

46. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

47. Plaintiff brings this case on behalf of two Classes. The first Prerecorded voice class is defined as follows:

> **Prerecorded Voice Class: All persons within the United States who received any solicitation/telemarketing phone calls from Defendant to said person's cellular telephone made through the use of an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.**

48. The class concerning the National Do-Not-Call violation (hereafter "The DNC Class") is defined as follows:

> **All persons within the United States registered on the National Do-Not-Call Registry for at least 30 days, who had not granted Defendants prior express consent nor had a prior established business relationship, who received more than one call made by or on behalf of Defendants that promoted Defendants' products or services, within any twelve-month period, within four years prior to the filing of the complaint.**

49. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

50. Upon information and belief, Defendants have placed artificial and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United

States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

51. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

**COMMON QUESTIONS OF LAW AND FACT**

52. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> **(1)** Whether Defendants made non-emergency calls to Plaintiff's and Class members' cellular telephones using an artificial or prerecorded voice;
>
> **(2)** Whether Defendants can meet its burden of showing that it obtained prior express written consent to make such calls;
>
> **(3)** Whether Defendants called Plaintiff and class members more than two times in a 12-month period;
>
> **(4)** Whether Plaintiff and class members were on the National Do Not Call registry within 31 days before the calls to Plaintiff and class members;
>
> **(5)** Whether Plaintiff and class members has a prior existing business relationship with Defendants;
>
> **(6)** Whether Defendants' conduct was knowing and willful;
>
> **(7)** Whether Defendants are liable for damages, and the amount of such damages; and
>
> **(8)** Whether Defendants should be enjoined from such conduct in the future.

53. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely made phone calls to telephone numbers assigned to

cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

54. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

55. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

56. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

57. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

///

## COUNT I

## **Violations of the TCPA, 47 U.S.C. § 227(b)**

### (On Behalf of Plaintiff and the Prerecorded Voice Class)

58. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

59. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using… an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

60. Defendants – or third parties directed by Defendants – called Plaintiff using an artificial or prerecorded voice to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

61. These calls were made without regard to whether or not Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

62. Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an artificial or prerecorded voice to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

63. Defendants knew that they did not have prior express consent to make these calls, and knew or should have known that it was calling using an artificial or prerecorded voice. The violations were therefore willful or knowing.

64. As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a

minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

**WHEREFORE**, Plaintiff, on behalf of himself and the other members of the Class, prays for the following relief:

    a. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

    b. An injunction prohibiting Defendants from using an artificial or prerecorded voice to call telephone numbers assigned to cellular telephones without the prior express permission of the called party;

    c. An award of actual and statutory damages; and

    d. Such further and other relief the Court deems reasonable and just.

## COUNT II

### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)
**(On Behalf of Plaintiff and the Prerecorded Voice Class)**

65. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

66. At all times relevant, Defendants knew or should have known that its conduct as alleged herein violated the TCPA.

67. Defendants knew that they did not have prior express consent to make these calls and knew or should have known that their conduct was a violation of the TCPA.

68. Because Defendants knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its artificial or prerecorded voice calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

69. As a result of Defendants' violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT III

### Negligent Violations of the TCPA, 47 U.S.C. § 227(c)

**(On Behalf of Plaintiff and the DNC Class)**

70. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

71. The foregoing acts and omissions of Defendants constitutes numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227(c)*, and in particular *47 U.S.C. § 227 (c)(5)*.

72. As a result of Defendants' negligent violations of *47 U.S.C. § 227(c)*, Plaintiff and the DNC Class Members are entitled an award of $500.00 in statutory damages in the amount of $500, for each and every violation, pursuant to *47 U.S.C. § 227(c)(5)(B)*.

73. Plaintiff and the DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT IV

### Knowing/Willful Violations of the TCPA, 47 U.S.C. § 227(c)

**(On Behalf of Plaintiff and the DNC Class)**

74. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth in the paragraphs above.

75. The foregoing acts and omissions of Defendants constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227(c)*, in particular *47 U.S.C. § 227 (c)(5)*.

76. As a result of Defendants' knowing and/or willful violations of *47 U.S.C. § 227(c)*,

        Plaintiff and the DNC Class members are entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(c)(5)*.

77.     Plaintiff and the DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**WHEREFORE**, Plaintiff, on behalf of himself and the other members of the Class, prays for the following relief:

    a. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

    b. An injunction prohibiting Defendants from using an artificial or prerecorded voice to call telephone numbers assigned to cellular telephones without the prior express permission of the called party;

    c. An award of actual and statutory damages; and

    d. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

Date: August 26, 2022                              **KAZEROUNI LAW GROUP, APC**

                                                                       By: /s/Ryan L. McBride
                                                                       Ryan L. McBride
                                                                       Attorney for the Plaintiff